# EXHIBIT 1

CHANDLER V. AMTRAK

Case No. 2:17 cv-01291-TLN-EFB

EXHIBIT 1 – DEFENDANT'S EXPERT DISCLOSURES

1 | JACOB D. FLESHER – SBN 210565
JASON W. SCHAFF – SBN 244285
2 | JEREMY J. SCHROEDER – SBN 223118
**FLESHER SCHAFF & SCHROEDER, INC.**
3 | 2202 Plaza Drive
Rocklin, CA 95765
4 | Telephone: (916) 672-6558
Facsimile:  (916) 672-6602
5 |
Attorneys for defendants,
6 | NATIONAL RAILROAD PASSENGER CORPORATION
dba AMTRAK
7 |

8 | IN THE UNITED STATES DISTRICT COURT

9 | IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

10 | * * *

11 | TAKIYA CHANDLER, as Guardian Ad Litem
for K.D., a minor,

**CASE NO. 2:17-CV-01291-TLN-EFB**
*San Joaquin Sup. Court Case No.: STK-CV-UPI-2017-2762*
*Complaint filed: 3/24/17*
*Trial Date: 2/25/19*

12 |
13 | Plaintiffs,

14 | vs.

**DEFENDANT NATIONAL RAILROAD
PASSENGER CORPORATION dba
AMTRAK'S EXPERT DISCLOSURE**

15 | AMTRAK, and DOES 1 through 100;

16 | Defendants.

17 |

18 | Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, Defendant NATIONAL

19 | RAILROAD PASSENGER CORPORATION dba AMTRAK discloses the following information

20 | regarding expert witnesses for trial:

21 | **RETAINED EXPERT**

22 | 1.      Kevin Mikaelian M.D.
2545 W. Hammer Lane
23 | Stockton, CA 95209

24 | Dr. Mikaelian is a Board Certified Orthopedic Surgeon. A copy of Dr. Mikaelian's report,

25 | curriculum vitae and fee schedule are attached as Exhibit 1. Dr. Mikaelian's fee for deposition

26 | testimony is $1,000 per hour with a one hour minimum and his fee for videotaped deposition

27 | testimony is $1,500 per hour with a one hour minimum.

28 | ///

1

DEFENDANT'S EXPERT DISCLOSURES

**NON-RETAINED EXPERTS**

1. Alice Answorth, M.D., UCSF Medical Center, 505 Parnassus Ave., San Francisco, CA 94143. This pediatric trauma physician is expected to present evidence regarding plaintiff's presentation and diagnosis on September 3, 2016, including a normal lower extremity examination and lack of subjective complaints relating to the lower extremities. See Exhibit 2.

2. Sei Lee, M.D., UCSF Medical Center, 505 Parnassus Ave., San Francisco, CA 94143. This pediatric trauma physician is expected to present evidence regarding plaintiff's presentation and diagnosis on September 3, 2016, including a normal lower extremity examination and lack of subjective complaints relating to the lower extremities. See Exhibit 2.

3. Andrea Tenner, M.D., UCSF Medical Center, 505 Parnassus Ave., San Francisco, CA 94143. This emergency medicine physician is expected to present evidence regarding plaintiff's presentation and diagnosis on September 3, 2016, including a normal lower extremity examination and lack of subjective complaints relating to the lower extremities. See Exhibit 3.

4. Andrew Callen, M.D., UCSF Medical Center, 505 Parnassus Ave., San Francisco, CA 94143. This radiologist is expected to present evidence regarding radiographic studies of plaintiff performed on September 11, 2016, including his finding that no lower extremity fracture, swelling or effusion were present. See Exhibit 4.

5. Terry Lynch, M.D., UCSF Medical Center, 505 Parnassus Ave., San Francisco, CA 94143. This radiologist is expected to present evidence regarding radiographic studies of plaintiff performed on September 11, 2016, including his finding that no lower extremity fracture, swelling or effusion were present. See Exhibit 4. And, is expected to present evidence regarding radiographic studies of plaintiff performed on October 3, 2016, including his finding that no lower extremity fracture was present. See Exhibit 4.

6. James Frenchner, M.D., UCSF Medical Center, 505 Parnassus Ave., San Francisco, CA 94143. This radiologist is expected to present evidence regarding radiographic studies of plaintiff performed on October 3, 2016, including his finding that no lower extremity fracture was present. See Exhibit 4.

///

1      Defendant reserves the right to submit the names of additional expert witnesses for the

2 purposes of expressing opinions on any subject covered by experts designated by Plaintiffs.

3      Defendant has not completed its investigation and has not determined all of its needs for expert

4 witnesses.  Should Defendant determine that further experts need to be called, a supplemental expert

5 witness list will be exchanged pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

6      Defendant further reserves the right to call as expert witnesses any and all persons disclosed by

7 any other party to this action but not called to testify at trial, and any and all persons whose depositions

8 may be taken after the date of the service of this exchange.

9 DATED:  May 31, 2018         **FLESHER SCHAFF & SCHROEDER, INC.**

10

11         By
           JACOB D. FLESHER

           JASON W. SCHAFF

12            JEREMY J. SCHROEDER

           Attorneys for defendant,

13            NATIONAL RAILROAD PASSENGER

           CORPORATION dba AMTRAK

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S EXPERT DISCLOSURES

# EXHIBIT 1

**Kevin Mikaelian M.D.**
**Board Certified Orthopedic Surgeon**

May 23, 2018

Mr. Jeremy Schroeder, Esq.
Flesher Schaff & Schroeder
2202 Plaza Drive
Rocklin, CA 95765

## MEDICAL RECORD REVIEW

RE:    Case name: Chandler/K.D. v. Amtrak
       Claimant: Kamilah Davis
       Case No.: U.S. Eastern District CA | 2:17-CV-01291
       Date of loss: 9/2/2016

Dear Mr. Schroeder:

I have had the opportunity to perform a medical record review on Kamilah Davis. I reviewed two inches worth of charts and three X-ray studies in preparation of this report.

**Medical Record Review**

On 2/9/12 the claimant was seen at San Francisco General Hospital. It was noted the claimant had bilateral varus angulation of both legs. No treatment was given.

On 7/27/15 the claimant was seen as San Francisco General Hospital for a well child checkup. The claimant's family was instructed on a good diet with less sugars.

On 9/3/16 the claimant was seen in the emergency department at San Francisco General Hospital. The claimant, per the grandmother, was standing on a train upstairs.  After the train stopped, they started downstairs. The train moved and the claimant fell down nine steps. This happened the day prior to being seen. Examination noted normal lower extremity exam including normal range of motion. There was a laceration over the left eye which was sutured.

On 9/11/16 the claimant was seen at San Francisco General Hospital emergency department. The claimant noted pain in both of her knees after her fall a week ago. The claimant pointed to the left knee when asked where she hurts. Examination showed normal range of motion of the left knee. No swelling, no erythema, no tenderness to palpation of the left knee. The claimant's gait

RE:  Kamilah Davis
May 23, 2018
Page **2** of **5**

was normal there was no complaints with jumping and running. X-ray of the left knee showed no evidence of acute trauma. There was a dense metaphyseal band along the anterior and posterior tibial metaphysis. There was proximal tibia periostitis. There was no effusion and no evidence of soft tissue swelling. X-rays of the right knee showed no evidence of trauma and no effusion.

On 9/12/16 claimant was seen by Dr. Delgado. The claimant was seen for bilateral knee injuries. Examination noted both knees had full motion and normal patellar tracking. No deformity, no swelling and no instability. There was tenderness over the distal femur bilaterally. The claimant was independently squatting and kneeling on the exam table and ambulating without a limp. The claimant was diagnosed with bilateral distal femoral growth plate fractures. The claimant was placed in bilateral cylinder casts. She was to follow-up in three weeks.

On 10/3/16 the claimant was seen by Dr. Delgado. The claimant's cylinder casts were removed. Exam showed stiffness on range of motion of both knees. Positive tenderness over the distal femoral region. No edema or cyanosis. X-rays done showed dense tibial metaphyseal bands bilaterally. There was no evidence of fracture. Joint spaces were normal. There was periostitis of the left tibia and no periostitis of the right tibia. The claimant was started on weight-bearing.

On 10/10/16 the claimant was seen in the emergency department at San Francisco General Hospital. The claimant's mom noted difficulty with walking and buckling of both legs. Examination noted normal range of motion of both knees. Normal motor strength and normal sensation in both lower extremities. The assessment was the claimant was walking and running well. There was no suspicion for further injury given how well she was ambulating and ranging. Likely there was atrophy due to her casts. It was recommended she have an orthopedic consultation.

On 3/1/17 a letter was generated by Dr. Saint-Hilaire. The letter stated the claimant suffered from bilateral distal growth plate fractures of her legs. She is now status post cast removal and must have physical therapy and wear leg braces for six months or until the orthopedic surgeon clears the claimant.

On 5/10/17 the claimant was seen by Dr. Saint-Hilaire. Examination noted the claimant could balance on one foot. She was able to hop and skip. The claimant was referred to physical therapy.

On 8/9/17 the claimant was seen by Naomi Schoenfeld N.P. Examination showed both knees were within normal limits. The claimant was to follow up with orthopedics and physical therapy.

On 8/18/17 the claimant was seen by Dr. Leung. The claimant refused vaccination per mother.

On 11/27/17 the claimant was seen by Dr. Wolfe. It was noted the claimant's growth and development was appropriate.

RE: Kamilah Davis
May 23, 2018
Page **3** of **5**

## Non-Medical Record Review

On 2/13/18 there was a deposition of Takiya Chandler. Summary of this deposition is outlined below:

-She is the mother of the claimant.

-The claimant and family were on an Amtrak train upstairs. The train had stopped and they were attempting to walk down the stairs. The training apparently did a little shake and the claimant fell down the stairs. She had bleeding on her face and she was crying.

-The claimant landed on her right side after the fall.

-The claimant was complaining that her face was hurting after the fall. She did not complain of anything else until two weeks later.

-The claimant walked on her own from the train to the bus.

-The claimant woke up the next day complaining of leg pain. She was able to walk. She also went to school that day.

-At first only the right leg was bothering her but the left leg started hurting later on.

-She still wears her braces on her legs roughly 5 to 6 times per month.

-Initially, the claimant had three treatments of physical therapy. About six months later she had two more visits of therapy.

## Diagnostic Review

Imaging studies were provided in the medical record review. My interpretation of these studies are outlined below:

9/11/16 X-ray of the right knee. Normal knee alignment. Joint spaces are well maintained. Growth plates are normal with no sign of trauma. No soft tissue swelling.

9/11/16 X-ray of the left knee. Normal alignment of the knee. Joint spaces are well maintained. Growth plates are normal with no sign of trauma.

10/3/16 Bilateral knee X-rays. Normal alignment of both knees. No sign of trauma. No evidence of callus formation or bone response to trauma.

RE: Kamilah Davis
May 23, 2018
Page **4** of **5**

## Summary and Discussion

At the time of her accident, the claimant was a four-year-old child. She was on a train upstairs and when the train stopped, she was going downstairs. There was a sudden jerk on the train and she fell down the stairs. Initially she complained of pain in her head and face. She had a laceration on her face. There were no other complaints at that time.

The following day, the claimant was seen in the emergency department at San Francisco General Hospital. There was an abrasion over the left eye which was sutured. Her lower extremity examination was normal including normal range of motion. Approximately one week after the accident, the claimant was again seen at San Francisco General Hospital emergency department. The claimant noted pain in both legs after her fall one week prior. Examination noted normal range of motion of the left and right knees. There was no tenderness or swelling of either knee. X-rays of both knees showed no evidence of acute trauma. There was a dense metaphyseal band along the tibial metaphysis bilaterally. There was a periosteal reaction over the left proximal tibia but not the right proximal tibia.

The following day, the claimant was seen by Dr. Delgado. Again, examination noted normal motion of both knees. There was no swelling. The claimant was able to independently squat and kneel as well as ambulate without a limp. There was tenderness over the distal femur bilaterally. The claimant was diagnosed with bilateral distal femoral fractures. The claimant was placed in bilateral cylinder casts. Three weeks later the cast were removed. X-rays showed no evidence of fracture. The claimant was then started on weight-bearing.

Approximately five weeks after the accident, the claimant was seen in the emergency department at San Francisco General Hospital. Per her mother, the claimant had difficulty with walking and buckling of both legs. Examination noted normal range of motion. There was normal motor strength and normal sensation. The claimant was diagnosed with stiffness and atrophy likely due to her cast immobilization. An orthopedic consult was recommended.

Roughly six months after the accident, the claimant was seen by Dr. Saint-Hilaire, who generated a note saying the claimant must have physical therapy and leg braces for six months due to her bilateral distal femoral fractures. The claimant did appear to have some physical therapy prior and after this visit. A few months later, the claimant was seen again by Dr. Saint-Hilaire and it was noted the claimant was able to balance on one foot, hop and skip.

During the mother's deposition, it was noted the claimant was able to walk to the bus after the fall. The claimant complained the next day of leg pain. She was able to walk to school that day.

The issue in this case is whether or not the claimant sustained significant injuries to both distal femurs after her accident. The x-rays after the accident did not show any evidence of fracture or trauma. Subsequent x-rays, done one month after the accident, continue to show no evidence of

RE: Kamilah Davis
May 23, 2018
Page **5** of **5**

acute trauma and no evidence of a healing fracture. There were periosteal bands in the proximal tibia which were due to factors unrelated to injury. The main reason for diagnosis of distal femoral fractures of her growth plates was due to tenderness over both distal femurs. If there truly was a distal femoral physeal fracture on either leg, the claimant would have had acute pain and the inability to walk without significant pain right after the accident. Clearly this was not the case. The claimant walked from the train to the bus and subsequent examinations show the claimant was walking and playing quite normally.

Nondisplaced growth plate injuries may not show up on x-ray. Clinical assessment sometimes is needed to make the diagnosis. Tenderness over the growth plates are one sign there may be a fracture. However, there is no way for a four-year-old child to have a distal femoral growth plate fracture without significant pain on weight-bearing. In fact, it would be very difficult for a four-year-old to walk at all if there were these types of fractures. In my opinion, the claimant was treated with bilateral cylinder casts on suspicion only and the diagnosis was incorrect. Subsequently the claimant had stiffness and difficulties because of the cylinder cast immobility. This likely took a while for the claimant to overcome.

It is my opinion the claimant had no distal femoral growth plate fracture or any other lower extremity injuries due to her fall down the stairs. I see no reason for any treatment of these injuries short of rest and limited activities for the first two weeks after the accident. As I also stated, the proximal tibial physeal bands were due to growth plate disturbances long before the accident. Since the claimant had no significant growth plate injuries, I see no reason for there to be any growth abnormalities or any other ongoing problems as a result of the fall.

If further records are obtained that change the opinions of this report, I will issue an addendum.

Kind Regards,

Kevin Mikaelian M.D.
Board Certified Orthopedic Surgeon

# Kevin K Mikaelian, M.D.

916-626-5500

| | |
|---|---|
| **DOB** | September 23, 1965 |
| **Education** | **Graduate:**<br>UCLA School of Medicine, Los Angeles, CA<br>Doctor of Medicine June 1992<br><br>**Internship:**<br>Stanford University Medical Center, Stanford, CA<br>General Surgery 1992-1993<br><br>**Residency:**<br>Stanford University Medical Center, Stanford, CA<br>Orthopedic Surgery Resident 1993-1997 |
| **Practice** | **Gould Medical Group**<br>Orthopedic Surgeon<br>Stockton, CA   2009-present<br><br>**Stockton Orthopedic Medical Group, Inc.**<br>Orthopedic Surgeon<br>Stockton, CA  1997-2009 |
| **Licensor** | California Medical Board # G078209 |
| **Board Certification** | American Board of Orthopaedic Surgery – July 2000<br>Recertification 2011 |
| **Professional Associations** | San Joaquin County Medical Society<br>American Academy of Orthopedic Surgeons<br>California Medical Association<br>California Orthopedic Association |
| **Staff Appointments** | Sutter Stockton Surgery Center, Stockton CA<br>Dameron Hospital, Stockton CA – Stockton, CA<br>St. Joseph's Surgery Center, Stockton CA<br>San Joaquin General Hospital, French Camp CA |

| Kevin Mikaelian, M.D. | FEE |
|---|---|
| Record Review Only: Provide Verbal and/or written expert opinion based on medical records and/or diagnostic studies. | $ 750/hr |
| Independent Medical Evaluation: Conduct physical examination. | $ 750/hr<br><br>(1 hour minimum) |
| Record Review Supplemental Report: Additional medical records received after examinations are processed as a supplemental providing report and/or verbal findings. | $ 750/hr |
| Consultation: Telephone, pre-trial or pre-deposition. | $ 750/hr<br><br>(15 minute increments) |
| Deposition/Videotaped Testimony: Professional Testimony by the retained expert. | Deposition (1 hr min): $1,000/hr<br>Videotaped Testimony<br>(1 hr min): $1,500/hr |
| Trial/Arbitration Testimony: Professional Testimony by the retained expert.<br>Half Day- 8:00am-12:00pm or 1:00pm-5:00pm<br>*Please note any hours outside the half day blocks above will constitute a full day trial/arbitration fee | Arbitration/Trial<br>Half Day: $5,000 flat<br><br>Arbitration/Trial<br>Full Day: $9,000 flat |
| Rush: Preparation of expedited report, verbal and/or written. | Rush fee determined on a case by case basis:<br>$250-$1,000 flat<br>(1-26 days) |
| Rush: Medical records received in less than five (5) business days. | $25 per inch<br><br>(rush indexing fee) |
| Travel: Travel time plus expenses for Exam and/or Testimony. | $300/hr plus expenses |
| No Show/Late Cancellation on Exams: Scheduled evaluation appointment missed or cancelled with less than four (4) business days' notice. | $ 750 flat |
| No Show/Late Cancellation on Testimony: Scheduled testimony missed or cancelled with less than four (4) business days' notice. | Deposition: $700 flat<br>Videotaped Deposition:<br>$1,050 flat<br>Half Day Trial/Arbitration:<br>$2,500 flat<br>Full Day Trial/Arbitration:<br>$4,500 flat |

# EXHIBIT 2

**SF Health Network**
**San Francisco General**
**Hospital and Trauma Center**

SF HEALTH NETWORK
SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH

Name: Davis, Kamilah
DOB: 10/15/2011
MRN: 0181146?
PCP:

## CONSULTATION REPORT

Patient ID/Addressograph          Location:

**TO:** ED
(CONSULTING SERVICE LOCATION)

**FROM:** PEDIATRICS
(REQUESTING SERVICE)

REASON FOR CONSULTATION

Pediatric trauma

| ATTENDING PHYSICIAN'S NAME (PRINT) | RESIDENT PHYSICIAN'S NAME (PRINT) | BEEPER NO. | DATE |
|---|---|---|---|
| alice ainsworth | LEE, SKY | 4439087 | 9/3/16 |

### CONSULTANT'S REPORT

ID: 4 yo previously well female presented s/p fall down 8-9 stairs 4 hours prior to presentation. Brought in by grandmother Lee

HPI: She was on an amtrac train waiting to deboard, at the top of the stairs with an older (teen) relative. The train stopped abruptly & she fell down the stairs & hit her head. She did not lose consciousness, no emesis, no gait. She is complaining of pain. She has a small cut on her left eye, bleeding stopped c pressure

PMH: none
all: none

O: T 36° BP 114/74 HR 92 RR 21 O2sat 100% RA

Gen: awake, alert, playful / interactive
HEENT: no sxn laceration on lateral aspect of ⓛ eye. PERRL. MMM, OP TM wnl
       no neck abnormalities, no spinal tenderness
CV: RRR no m/r/g
resp: CTAB no w/r/r
abd: ⊕ BS, soft NTND
EXT: cap refill <2s, no edema
     moves all extremities

A/P: 4 yo f s/p fall down 8-9 stairs c small laceration over ⓛ eye. less likely to have intracranial bleed, possible mild concussion. Imaging not indicated
  - OBS x2 more hours, return home if no emesis, AMS, ↑ pain
  - ibuprofen 10mg/kg or acetaminophen 15mg/kg prn pain
  - laceration - washout & close
  - f/u c PMD

| ATTENDING PHYSICIAN'S NAME (PRINT) | SIGNATURE | PHYSICIAN NO. | DATE |
|---|---|---|---|
| alice ainsworth | Lee, Sky | 203687 | 9/3/16 |

57-1001-F710 (Rev. 2/00)          MEDICAL RECORDS

CONSULTATION REPORT

Records From: SAN FRANCISCO GENERAL HOSPITAL  TR
Regarding: E.D. A MINOR VS. AMTRAK
Quest Discovery Services - SJS710281

000124

# EXHIBIT 3



## SFGH ED
## EMERGENCY RECORD

**DAVIS, KAMILAH O**
DOB: 10/15/2011 F4
Wt/Ht:
MedRec: 01811462
AcctNum: 200036183602

—————————— Patient Data ——————————

**Complaint:** FALL
**Triage Time:** Sat Sep 03, 2016 02:38
**Urgency:** 1
**Bed:** ED POD–C
**Initial Vital Signs:** 9/3/2016 04:31
  **BP:**95/56
  **P:**93
  **O2 sat:**98 on Room air

**ED Attending:** Tenner, MD, Andrea 211763
**Primary RN:** Nakagawa, RN, Dan

**R:**16
**T:**36.9 (Temporal Artery)
**Pain:**0

### KNOWN ALLERGIES
No recorded allergies

### CURRENT MEDICATIONS
No recorded medications

**TRIAGE** (Sat Sep 03, 2016 02:38 JAZ)
PATIENT: AGE: 4, GENDER: female, DOB: Sat Oct 15, 2011, TIME OF GREET: Sat Sep 03, 2016
  02:18, PREFERRED LANGUAGE: English, Zip Code: 94124, MEDICAL RECORD NUMBER:
  01811462, ACCOUNT NUMBER: 200036183602. (Sat Sep 03, 2016 02:38 JAZ)
NAME: DAVIS, KAMILAH O. (04:10)
COMPLAINT: FALL. (Sat Sep 03, 2016 02:38 JAZ)
ADMISSION: URGENCY: 1, ADMISSION SOURCE: Street, TRANSPORT: Walked, BED:
  RESUS 06. (Sat Sep 03, 2016 02:38 JAZ)
TRIAGE NOTE: Notes: Pt immediately taken to Resus 6 for a 911 activation. (02:38 JAZ)
SPECIAL CIRCUMSTANCES: Minor, Parents advised. (Sat Sep 03, 2016 02:38 JAZ)
SUBJECTIVE: Per grandma, pt was standing on the train and it came to a sudden stop and pt
  fell down 9 steps. No LOC. (Sat Sep 03, 2016 02:38 JAZ)
OBJECTIVE: Small lac noted to L eye. (Sat Sep 03, 2016 02:38 JAZ)
PERTINENT NEGATIVES: LOC, AMS, pallor, diaphoresis. (Sat Sep 03, 2016 02:38
  JAZ)
MECHANISM OF INJURY: Fall, Height (ft): 9. (Sat Sep 03, 2016 02:38 JAZ)
MENTAL STATUS: Alert, Oriented. (Sat Sep 03, 2016 02:38 JAZ)
GCS: GCS Total: 15. (Sat Sep 03, 2016 02:38 JAZ)
PROVIDERS: TRIAGE NURSE: Jasmina Quezada, RN. (Sat Sep 03, 2016 02:38 JAZ)

### EVENTS
ATTENDING: Tenner, MD, Andrea 211763 saw patient at Sat Sep 03, 2016 03:09. (03:09
  TAU)
RESIDENT: Daniel, MD, Rosny 177477 saw patient at Sat Sep 03, 2016 02:56. (02:56
  ROD)
TRANSFER: Triage to Emergency Resuscitation Bay 06. (Sat Sep 03, 2016 02:38 JAZ)
  Emergency Resuscitation Bay 06 to POD C 02. (04:26 NDA)
  Removed from Emergency POD C 02. (06:58 NDA)

### VITAL SIGNS
VITAL SIGNS: BP: 95/56, Pulse: 93, Resp: 16, Temp: 36.9 (Temporal Artery), Pain: 0, O2 sat:
  98 on Room air, Time: 9/3/2016 04:31. (04:31 NDA)

---

Prepared: Sun Sep 25, 2016 02:03 by Interface        Page: 1 of 6

Records From: SAN FRANCISCO GENERAL HOSPITAL  TR
Regarding: KD, A MINOR VS. AMTRAK
Quest Discovery Services - SJS710201



## SFGH ED
## EMERGENCY RECORD

DAVIS, KAMILAH O
DOB: 10/15/2011 F4
Wt/Ht:
MedRec: 01811462
AcctNum: 200036183602

BP: 104/60, Pulse: 90, Resp: 16, Pain: 0, O2 sat: 98 on Room air, Time: 9/3/2016 06:30. (06:30 NDA)

### HPI TRAUMA (04:12 ROD)

History of Present Illness: 4 y/o healthy girl BIBS as 911 – had witnessed mechanical fall down 9 concrete stairs, hit the R side of her face and has small laceration lateral to L eye. No LOC, no headache, no AMS, no n/v, not on any meds, acting like herself other than complaining of pain at laceration site. Denies chest pain, belly pain, extremity injury.

CHIEF COMPLAINT: Patient presents for evaluation of trauma.

HISTORIAN: History provided by patient, History provided by patient's family.

MECHANISM OF INJURY: Known mechanism, Mechanism of injury fall.

LOCATION: Symptoms are localized.

QUALITY: Pain is dull in nature.

SEVERITY: Maximum severity of symptoms mild, Currently symptoms are mild.

TIME COURSE: Sudden onset of symptoms.

ASSOCIATED WITH: No associated neck pain, No associated chest pain, No associated abdominal pain, No associated alcohol use, No associated loss of consciousness, No associated neurological symptoms prior to arrival.

RELIEVED BY: Patient's condition relieved by nothing because patient has not tried anything for relief.

RISK FACTORS: No risk factors for spinal injury, No risk factors for intracranial bleed.

### PAST MEDICAL HISTORY (04:13 ROD)

PEDIATRIC HISTORY: No past medical history, Notes: no immunizations as patient's family doesn't believe in immunization.

PED SOCIAL HISTORY: Social history includes no ill contacts.

PED FAMILY HISTORY: Family history is noncontributory.

### ROS (04:14 ROD)

CONSTITUTIONAL PED: Historian denies chills, Historian denies fever.

EYES PED: Historian denies tearing, Historian denies vision changes.

CARDIOVASCULAR PED: Historian denies chest pain.

RESPIRATORY PED: Historian denies cough, Historian denies shortness of breath.

GI PED: Historian denies abdominal pain, Historian denies nausea, Historian denies vomiting.

MUSCULOSKELETAL PED: Historian denies bony pain, Historian denies muscle pain.

NEUROLOGIC PED: Historian denies dizziness, Historian denies headache, Historian denies irritability.

PSYCHIATRIC/BEHAVIORAL: Historian denies emotional lability.

### PHYSICAL EXAM (07:43 ROD)

CONSTITUTIONAL: Patient afebrile, Pulse normal, Blood pressure normal, Respiratory rate normal, Patient appears non toxic.

HEAD: Head exam included findings of head atraumatic.

EYES: Pupils equally round and reactive to light, Extraocular muscles intact, 0.3 cm laceration lateral to L eye.

ENT: normal TMs.

Prepared: Sun Sep 25, 2016 02:03 by Interface                                     Page: 2 of 6

Records From: SAN FRANCISCO GENERAL HOSPITAL  TR
Regarding: K.D. A MINOR VS. AMTRAK
Quest Discovery Services  SJS710201

000146



## SFGH ED
## EMERGENCY RECORD

**DAVIS, KAMILAH O**
DOB: 10/15/2011 F4
Wt/Ht:
MedRec: 01811462
AcctNum: 200036183602

NECK: Trachea midline, no tenderness.
RESPIRATORY CHEST: Breath sounds clear, no tenderness, no crepitus.
CARDIOVASCULAR: Cardiovascular exam included findings of heart rate regular rate and rhythm, Heart sounds normal.
ALL ABD UNISEX: Abdominal exam included findings of abdomen nontender, no distension, no mass.
BACK: Back exam included findings of normal inspection, range of motion normal.
UPPER EXTREMITY: Upper extremity exam included findings of inspection normal, Range of motion normal.
LOWER EXTREMITY: Lower extremity exam included findings of inspection normal, Range of motion normal.
NEURO: Glasgow coma scale 15, Neuro exam findings include patient oriented to person, place and time, Cranial nerves intact, no focal motor deficits, no focal sensory deficits.
SKIN: Skin exam included findings of skin warm.
PSYCHIATRIC: Normal affect.

## LACERATION–SINGLE REPAIR (03:43 SKY)
LACERATION REPAIR: Side and/or site verified, Patient identification confirmed, Sterile procedures observed, Verbal consent obtained, Wound irrigated with normal saline, (mls) 250cc, Laceration repair with steri–strips, to left lateral edge of eye., total length 0.5 cm, Patient tolerated the procedure well, immunization refused by grandmother.

## DOCTOR NOTES
ASSESSMENT AND PLAN: Assessment and plan includes 4 y/o healthy girl BIBS as 911 – had witnessed mechanical fall down 9 concrete stairs, hit the R side of her face and has small laceration lateral to L eye. No LOC, no headache, no AMS, no n/v, not on any meds. acting like herself other than complaining of pain at laceration site.
ABCDs ntact
E – 0.2 cm laceration lateral to L eye, EOMI, PERRLA, no conjunctival injection
Ddx: skin laceration, reasonably low suspicion for ICH given low on PECARN scale and past obs period, no e/o any other injuries
Plan:
–obs x1 hour
–laceration repair
–grandparent refusing vaccination. (04:08 ROD)
Assessment and plan includes observed for >2hours, >6h since injury, no changes in mental status, no emesis, no headache. Laceration site, repaired with single steristrip.
–Discussed supportive care and given return precautions
–advised to f/u with PCP. (05:45 SKY)
RE–EVALUATION: Pt still stable after 1 hour obs. Ok to go to Pod C for laceration repair and discharge. (04:08 ROD)

## DIAGNOSIS (05:47 SKY)
FINAL: PRIMARY: head trauma.

## DISPOSITION

Records From: SAN FRANCISCO GENERAL HOSPITAL TR
Regarding: K.D. A MINOR VS. AMTRAK
Quest Discovery Services - SJS710301

000147



## SFGH ED
## EMERGENCY RECORD

DAVIS, KAMILAH O
DOB: 10/15/2011 F4
Wt/Ht:
MedRec: 01811462
AcctNum: 200036183602

PATIENT:  Disposition Type: Discharge, Disposition: Home or Self–Care. (05:47 SKY)
Patient left the department. (06:58 NDA)

### PRESCRIPTION
No recorded prescriptions

### INSTRUCTION (05:42 SKY)
DISCHARGE:  HEAD INJURIES, CHILD, EASY–TO–READ.
SPECIAL:  Keep the steristrip (adhesive) on, it will fall off by itself.
If she is acting differently, throwing up, or if there are other concerns, come back to the emergency
room or go to the clinic. You should follow up with her regular doctor.

### ATTENDING
ASSESSMENT INCLUDES:  Pt presents with grandmother after a fall down stairs while
traveling by train at approx. midnight. No LOC, only c/o pain at a small laceration near her L eye.
On exam, pt is interactive, appropriate with small 3mm gaping laceration near the L lateral canthus
Imp: fall, laceration
plan; No LOC, pt is appropriate, no vomiting. Will repair laceration. given risk of head CT at this
young age, will observe in the ED. Care transferred to Dr. Davey. (08:12 TAG)
ATTENDING ATTESTATION: I have personally performed a history and physical examination
of the patient and discussed management with the resident. Any areas of significant disagreement
are noted, I have reviewed the PMH, SH, FH, and ROS as documented by the residents, nurses
and/or midlevel practitioners under my supervision, and confirm the findings as documented unless
otherwise noted, I have reviewed all notes transcribed by the scribe as dictated by me. Any areas
of significant disagreement are noted. (Sun Sep 25, 2016 02:01 TAG)

### NURSING PROCEDURE: COMMUNICATIONS
COMMUNICATIONS: Notes: pt activated as 911 due to mechanism. (02:38 MAGS)
Notes: Dr. tenner notified pt to Pod C for obs. (03:56 LISA)

### NURSING PROCEDURE: DISCHARGE NOTE (06:37 NDA)
DISCHARGE: Patient discharged to home or self–care, ambulating without assistance, family
driving, accompanied by guardian, Printed copy of ED Discharge Instructions provided.,
Discharge Instructions given to patient., Other, grandmother, Simple or moderate discharge
teaching performed, by Dan Nakagawa R.N., Summary of Care printed, Above person(s)
verbalized understanding of discharge instructions and follow–up care, Notes: pt with
grandmother, grandmother will call pts mother to pick them both up from the lobby.

### NURSING PROCEDURE: NURSE NOTES
NURSES NOTES: Patient in no apparent distress, Patient resting quietly, Notes: Assuming
care of pt. The plan is to observe pt for a few more hours. Pt wakes to voice, s/s pwd, respirations
even/unlabored, mae. (04:30 NDA)
Notes: pediatric MD bedside. (05:40 NDA)

### ORDERS (Sun Sep 11, 2016 16:55 ODIA)
KNEE LEFT ROUTINE:  Ordered for: Diaz, MD, Olga 234146

Prepared: Sun Sep 25, 2016 02:03 by Interface

Page: 4 of 6

Records From: SAN FRANCISCO GENERAL HOSPITAL TR
Regarding: K.D. A MINOR VS. AMTRAK
Quest Discovery Services - SJS710301



## SFGH ED
## EMERGENCY RECORD

**DAVIS, KAMILAH O**
DOB: 10/15/2011 F4
Wt/Ht:
MedRec: 01811462
AcctNum: 200036183602

Status: Active.

### IMAGING
911/900 TRAUMA FLOW SHEET:  Page 1 added. Image captured from scanners. (07:22 BRM)

Page 2 added. Image captured from scanners. (07:22 BRM)
Page 3 added. Image captured from scanners. (07:22 BRM)
Page 4 added. Image captured from scanners. (07:22 BRM)
Page 5 added. Image captured from scanners. (07:22 BRM)
CONSULT NOTE:  Page 1 added. Image captured from scanners. (07:23 BRM)
Page 2 added. Image captured from scanners. (07:23 BRM)

### ADMIN
PATIENT DATA CHANGE:  Primary Nurse changed from (none) to Santiago Tan, RN.
(02:43 ST3)
A08 CHPFQP02 by Interface, Name: DAVIS, KAMILAH, SSN: 738346811, Phone: (415)678-0964, Payment: (none), Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (02:47)
A08 CHPFOREA by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (02:47)
Resident changed from (none) to Rosny 177477 Daniel, MD. (02:56 ROD)
Attending changed from (none) to Andrea 211763 Tenner, MD. (03:09 TAG)
Primary Nurse changed from Santiago Tan, RN to Avelino Asencio, RN. (03:13 AAS)
A08 CHPFQP02 by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (04:06)
A08 CHPFOREA by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (04:06)
A08 CHPFOREA by Interface, Name: DAVIS, KAMILAH O. (04:06)
A08 CHPFQP01 by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (04:06)
A08 CHPFQP02 by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (04:07)
A08 CHPFOREA by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (04:07)
Name: Davis, Kamilah O, Packs: TRAUMA – 911, Payment: (none). (04:09 LISA)
A08 CHPFQP02 by Interface, Name: DAVIS, KAMILAH O, Payment: (none), Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (04:10)
A08 CHPFOREA by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (04:10)
A08 CHPFQP02 by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (04:10)
A08 CHPFOREA by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (04:10)
A08 CHPFQP02 by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY ,KEVIN, , PCP Doctor: SAINT-HILAIRE ,LAMERCIE, . (04:11)

Prepared: Sun Sep 25, 2016 02:03 by Interface        Page: 5 of 6

Records From: SAN FRANCISCO GENERAL HOSPITAL  TR
Regarding: K.D. A MINOR VS. AMTRAK
Quest Discovery Services - 535710201

000149



## SFGH ED
## EMERGENCY RECORD

**DAVIS, KAMILAH O**
DOB: 10/15/2011 F4
Wt/Ht:
MedRec: 01811462
AcctNum: 200036183602

A08 CHPFOREA by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY
,KEVIN, , PCP Doctor: SAINT−HILAIRE ,LAMERCIE, . (04:11)
A08 CHPFQP02 by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY
,KEVIN, , PCP Doctor: SAINT−HILAIRE ,LAMERCIE, . (04:12)
A08 CHPFOREA by Interface, Admitting Doctor: DAVEY ,KEVIN, , Attending Doctor: DAVEY
,KEVIN, , PCP Doctor: SAINT−HILAIRE ,LAMERCIE, . (04:12)
Primary Nurse changed from Avelino Asencio, RN to Dan Nakagawa, RN. (04:25 NDA)
DIGITAL SIGNATURE:  Lee, MD, Sky 203687. (05:48 SKY)
Nakagawa, RN, Dan. (06:38 NDA)
Daniel, MD, Rosny 177477. (07:44 ROD)
Nasir, RN, Lisa. (Wed Sep 14, 2016 04:47 LISA)
Tenner, MD, Andrea 211763. (Sun Sep 25, 2016 02:01 TAG)

Key:

AAS=Asencio, RN, Avelino  BRM=Medina, MEA, Brenda  JAZ=Quezada, RN, Jasmina  LISA=Nasir, RN, Lisa
MAGS=Cabrera, RN, Magdalena  NDA=Nakagawa, RN, Dan  ODIA=Diaz, MD, Olga 234146  ROD=Daniel, MD, Rosny 17747
SKY=Lee, MD, Sky 203687  ST3=Tan, RN, Santiago  TAG=Tenner, MD, Andrea 211763

---

Prepared: Sun Sep 25, 2016 02:03 by Interface                                   Page: 6 of 6

---

Records From: SAN FRANCISCO GENERAL HOSPITAL  IR
Regarding: K.D. A MINOR VS. AMTRAK
Quest Discovery Services - SJS710291

000150

# EXHIBIT 4



San Francisco
**Department of Public Health**

| Patient DAVIS, KAMILAH | Birth Date 10/15/2011 | Sex F | Rm/Bed |
|---|---|---|---|
| Attending | MR # 01811462 | Pt # | Adm Date |

| Extremities(Up to 30 latest results) Last Activity: 10/03/2016 15:45 | | | |
|---|---|---|---|
| 03 Oct 2016 15:45 | Bilat Knee 2 Views | 📄 | (1)H |
| 03 Oct 2016 15:04 | Bilat Knee 2 Views | Imagenull | |
| 11 Sep 2016 18:54 | Knee Right Routine | 📄 | (2) |
| 11 Sep 2016 18:49 | Knee Right Routine | imagenull | |
| 11 Sep 2016 17:14 | Knee Left Routine | 📄 | (3) |
| 11 Sep 2016 17:06 | Knee Left Routine | Imagenull | |

Page created: Thursday, August 24, 2017 10:25 AM For: 764CGF

## Linked Reports

| (1)Bilat Knee 2 ViewsH | Oct 03, 2016 15:45 |
|---|---|

```
*** Final Report ***
Acc# 4306953
Dictating MD:  JAMES FRENCHER M.D.  (CHN#229435)  Dictated on:  Oct  3
2016  4:34PM
Reviewing MD:  TERRY LYNCH M.D.  (CHN#052670)
Signing MD:  TERRY LYNCH M.D.  (CHN#052670)  Signed on:  Oct  4 2016
12:35PM
DIA 9614 - BILAT KNEE 2 VIEWS - Oct  3 2016  3:45PM
Reason for Exam: BILAT KNEE PAIN
RESULT:  BILAT KNEE 2 VIEWS
Clinical History: BILAT KNEE PAIN
Comparison: Bilateral knee x-rays dated 9/11/2016
IMPRESSION:
Redemonstration of dense tibial metaphyseal band is present bilaterally
with periostitis seen along the anterior and posterior tibial metaphysis.
No periostitis on the right. Findings of bilateral metaphyseal banding in
the absence of periosteal reaction on the right favors nontraumatic cause
of dense metaphyseal band. Differential includes growth acceleration
lines, chronic anemia, or lead consumption. Correlate with clinical
history.
There is no evidence of fracture. Joint spaces are normal with normal
alignment. No joint effusion. There is no evidence of soft tissue
swelling or calcifications.
Electronically signed by Terry Lynch on 10/4/2016 12:35 PM
My electronic signature on this consultation report indicates my direct
involvement in the interpretation of the examination and/or the direct
supervision of the entire procedure and agreement with the report.
```

Page created: Thursday, August 24, 2017 10:25 AM For: 764CGF

| (2)Knee Right Routine | Sep 11, 2016 18:54 |
|---|---|

```
*** Final Report ***
Acc# 4294001
Dictating MD:  ANDREW CALLEN M.D.  (CHN#177238)  Dictated on:  Sep 11
2016  6:58PM
Reviewing MD:  TERRY LYNCH M.D.  (CHN#052670)
Signing MD:  TERRY LYNCH M.D.  (CHN#052670)  Signed on:  Sep 12 2016
7:29AM
DIA 9560 - KNEE RGHT ROUTINE - Sep 11 2016  6:54PM
```

User GIORGIO F. CASTILLO
*Confidential Information *SFGH Clin Lab, 1001 Potrero Ave, SF, CA 94110 Lab Dir:B. Haller MD, PhD*

Records From: SAN FRANCISCO GENERAL HOSPITAL  TR
Regarding: K.D, A MINOR VS. AMTRAK
Quest Discovery Services - SJS710201

San Francisco
Department of Public Health

| Patient DAVIS, KAMILAH | Birth Date 10/15/2011 | Sex F | Rm/Bed |
| Attending | MR # 01811462 | Pt # | Adm Date |

Reason for Exam: ABNORMALITY PRESENT LEFT KNEEASSESS FOR
RESULT: KNEE RGHT ROUTINE
Clinical History: ABNORMALITY PRESENT LEFT KNEEASSESS FOR CONTRA SIDE
Comparison: Contralateral knee radiograph obtained on the same date
IMPRESSION:
There is no evidence of fracture.
Joint spaces are normal with normal alignment.
A dense tibial metaphyseal band is present, similar to the contralateral
tibia. No periostitis.
No joint effusion. There is no evidence of soft tissue swelling or
calcifications.
Electronically signed by Terry Lynch on 9/12/2016 7:29 AM
My electronic signature on this consultation report indicates my direct
involvement in the interpretation of the examination and/or the direct
supervision of the entire procedure and agreement with the report.

Page created: Thursday, August 24, 2017 10:25 AM For: 764CGF

---

| (3)Knee Left Routine | Sep 11, 2016 17:14 |

\*\*\* Final Report \*\*\*
Acc# 4293973
Dictating MD: ANDREW CALLEN M.D. (CHN#177238) Dictated on: Sep 11
2016 5:32PM
Reviewing MD: TERRY LYNCH M.D. (CHN#052670)
Signing MD: TERRY LYNCH M.D. (CHN#052670) Signed on: Sep 12 2016
12:29PM
DIA 9559 - KNEE LEFT ROUTINE - Sep 11 2016 5:14PM
Reason for Exam: LEFT KNEE PAIN
RESULT: KNEE LEFT ROUTINE
Clinical History: LEFT KNEE PAIN
Comparison: None available
IMPRESSION:
There is no evidence of displaced fracture. Incidental note is made of a
dense metaphyseal band and periostitis along the anterior and posterior
tibial metaphysis, which is nonspecific and can be seen in a wide array
of pathologies. Correlate with clinical history.
Joint spaces are normal with normal alignment.
No joint effusion. There is no evidence of soft tissue swelling or
calcifications.
The above findings were discussed with Dr. Diaz by Dr. Andrew Callen
(radiology) on 9/11/2016 5:32 PM.
Electronically signed by Terry Lynch on 9/12/2016 12:29 PM
My electronic signature on this consultation report indicates my direct
involvement in the interpretation of the examination and/or the direct
supervision of the entire procedure and agreement with the report.

Page created: Thursday, August 24, 2017 10:25 AM For: 764CGF

Page 2 of 2
User GIORGIO F. CASTILLO
*Confidential Information \*SFGH Clin Lab, 1001 Potrero Ave, SF, CA 94110 Lab Dir:B. Haller MD, PhD\**

*Takiya Chandler v. Amtrak*
US District Court Eastern District Case No. 2:17-cv-01291-TLN-EFB

## PROOF OF SERVICE

I, Noelle Murray, declare that:

I am a citizen of the United States and am over the age of eighteen years and not a party to the within above-entitled action. My business address is 2202 Plaza Drive, Rocklin, CA 95765.

On May 31, 2018, I caused to be served the within document(s):

**DEFENDANT, NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK'S EXPERT DISCLOSURE**

on the parties in said action addressed as follows:

| | |
|---|---|
| Joel H. Siegal<br>235 Montgomery Street, Suite 1060<br>San Francisco, CA 94104<br>Ph: 415-777-5547<br>Fax: 415-777-5247 | **Attorneys for Plaintiffs** |

_____ [By Facsimile Machine (FAX)] On _____, at _____ a.m./p.m., by use of facsimile machine telephone number (916) 672-6602 I served a true copy of the aforementioned document(s) on the parties in said action by transmitting by facsimile machine to the numbers as set forth above. The facsimile machine I used complied with California Rules of Court, Rule 2003(3) and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2008(e), I caused the machine to print a transmission record of the transmission.

_X X_ [By Mail] I am familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service and that each day's mail is deposited with the United States Postal Service that same day in the ordinary course of business. On the date set forth above, I served the aforementioned document(s) on the parties in said action by placing a true copy thereof enclosed in a sealed envelope with First Class postage thereon fully prepaid, for collection and mailing on this date, following ordinary business practices at Rocklin, California, addressed as set forth above.

_____ [By Personal Service]   By personally delivering a true copy thereof to the office of the addressee above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on May 31, 2018, at Rocklin, California.

_____
Noelle Murray

# EXHIBIT 2

CHANDLER V. AMTRAK

Case No. 2:17 cv-01291-TLN-EFB

EXHIBIT 2 – SIGNED RELEASE

## GENERAL RELEASE

This Release, dated September 6, 2018, is given

BY:  **TAKIYA CHANDLER, a s Guardian Ad Litem for K█████ D████S, a minor,
Individually, of SAN FRANCISCO, CA**

referred to as "Releasor,"

and

**JOEL SIEGAL of the LAW OFFICES OF JOEL H. SIEGAL & ASSOCIATES,**
referred to as "Releasor's Attorneys,"

TO:  **NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK,
its/their employees, officers, directors, principals, attorneys including but not
limited to FLESHER SCHAFF & SCHROEDER, INC. contractors, subcontractors,
subsidiaries, affiliates, assigns, predecessors, and successors in interest, insurers,
indemnitors, indemnitees, agents, and representatives,**

referred to as "Releasees."

　　　1.　　**Release.** Releasor releases and gives up any and all claims and rights which Releasor may have against Releasees through the date of this Release. In addition, Releasor specifically releases and forever discharges Releasees from all legal liability as set forth herein, including:

　　　Any and all past, present and future claims, demands, actions, causes of action, verdicts, judgments, and awards of every kind whatsoever for any physical, mental, and/or emotional injuries, illnesses and/or conditions (including but not limited to **BILATERAL LOWER EXTREMITY INJURIES and FACIAL LACERATION** and including the associated risks, natural progression, aggravation, consequences, future manifestation and treatment, including but not limited to surgery, of all such injuries, illnesses and/or conditions, and the fear of same), damages, costs, expenses, attorneys' fees, contribution, indemnity, reimbursement, compensation, and losses of any kind, now existing, or which may hereafter arise, whether known or unknown, permanent or otherwise, including without limitation all claims arising from or out of the events alleged to have occurred on or about **September 2, 2016**, at or near **STOCKTON, CA** and including any and all claims set forth or which could have been set forth in the lawsuit of **2:17-CV-01291-TLN-EFB**, in the **EASTERN DISTRICT OF CALIFORNIA**, which said action Releasor agrees to dismiss/discontinue, with prejudice, "the Action".

　　　By executing this Release, it is Releasor's intention to enter into a final agreement with Releasees, and to ensure that Releasees have no further obligations to Releasor for any payments whatsoever for anything arising out of or in any way related to the Action.  Releasor also warrants that Releasor will not commence, prosecute, or permit to be commenced or prosecuted against the Releasees any action or other proceeding based upon any claims, demands, actions, causes of action, obligations, liabilities, or damages herein released.

1

In executing this release, I do hereby waive all rights and benefits which I now have or in the future may have under and by virtue of the terms of Section *1542* of the *Civil Code* of the State of California, which section reads as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor. *Civ. Code § 1542.*

**2.    Payment.** In consideration for this Release, Releasor has agreed to accept from Releasees the amount of **SEVEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($7,500.00).**

Releasees shall issue a check for **SEVEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($7,500.00)** made payable as the Court will order upon the satisfaction of any required minor's compromise processes, for the benefit of KAMILAH DAVIS (DOB 10/15/11). Releasor accepts this as full payment for making this Release. Releasor agrees that she will not seek anything further including any other payment from Releasees.

**3.    Liens.** To the extent that there are any liens or subrogation claims of any kind with respect to the Claim, Releasor and Releasor's Attorneys will be responsible for satisfying those liens or claims, including, without limitation, any workers' compensation liens, health insurance liens, Social Security liens, no-fault liens, PIP liens, attorneys' liens, any outstanding bills, and any liens or claims claimed by any insurer or healthcare provider, ERISA plan, MediCal, Medicare or Medicaid. Releasor and Releasor's Attorneys agree to indemnify, defend and hold Releasees harmless for any claim, loss or payment Releasees may suffer, including judgments, verdicts, awards, penalties, attorneys' fees and costs, that arises out of Releasor's and/or Releasor's Attorneys' failure to satisfy any and all liens or claims.

**4.  Future Medical Expenses.** In an effort to protect Medicare's interests, if any, the likelihood of future medical services and expenses has been taken into account by all parties to the Release, and the parties agree that Medicare's interests, if any, have adequately been considered. The parties to this Release agree that this Release is not intended to shift to Medicare the responsibility for payment of medical services and expenses, if any, related to the injuries of conditions that form the basis of this Claim. Instead, the parties agree that this settlement is intended to provide Releasor a lump sum payment in order to resolve a dispute between the parties, which will foreclose Releasees' responsibility for future payment of any and all medical services. Releasor understands and agrees that the risks and possible future effects of her injuries or conditions, including fear of same, are specifically bargained for, included and released by this agreement. Releasor also understands and agrees that acceptance of the settlement funds may affect her rights to other federal benefits including, but not limited to, the suspension or revocation of Medicare benefits at Medicare's sole discretion. Notwithstanding this possibility, Releasor desires to enter into this Release agreement to settle her claim according to the terms set forth in this Release.

Releasor and Releasor's Attorneys acknowledge and agree that they are solely responsible for the payment of any and all unpaid medical bills, as well as any and all future medical services and expenses, and that Releasees shall have no responsibility for same. Releasor agrees that if she is required to set-aside or repay any amount, up to and including the total amount of this settlement, in order to reasonably protect Medicare's interests under federal

2

law, she will be solely responsible for doing so in accordance with federal law. Releasor also agrees to manage the set-aside amount, keep records of all expenditures and report to Medicare as required by law. Releasor further acknowledges and agrees that he/she will neither apply for nor accept Medicare-covered services of any kind or nature for the alleged injuries or conditions arising out of the incident that forms the basis of this Claim in violation of the Medicare Secondary Payer Act, 42 U.S.C. §1395y(b), *et seq.*

Releasor and Releasor's Attorneys further agree to indemnify, defend and hold Releasees harmless for any claim, loss or payment Releasees may suffer, including judgments, verdicts, awards, penalties, attorneys' fees and costs, that arises out of Releasor's and/or Releasor's Attorneys' failure to pay any unpaid medical bills or future medical expenses, or otherwise protect Medicare's interests under the Medicare Secondary Payer Act, 42 U.S.C. §1395y(b)*, et seq.* ("MSP") Releasor and Releasor's Attorneys expressly waive any rights Releasor and Releasor's Attorneys may have to bring an action against Releasees under the MSP.

Finally, it is understood and agreed that Releasor hereby agrees as part of this Release to provide Releasees, within thirty (30) days of their request, any and all information required for compliance with Section 111 of the Medicare, Medicaid & SCHIP Extension Act of 2007, 42 U.S.C. §1395y(b)(8). Releasor agrees to indemnify, defend and hold Releasees harmless for any claim, loss or payment Releasees may suffer, including judgments, verdicts, awards, penalties, attorneys' fees and costs that arises out of Releasor's failure to do so.

**5.      No Admissions**. Releasor agrees that by settling the Claim, no party shall be deemed to have admitted liability or fault with respect to the alleged accident or incident giving rise to the Claim or any issues related to the Claim.

**6.      Binding Agreement**. Releasor and Releasor's Attorneys are bound by this Release. Anyone who succeeds to Releasor and Releasor's Attorney's rights and responsibilities is also bound. This Release is made for Releasees' benefit and all who succeed to Releasees' rights and responsibilities.

**7.      Governing Law.** Releasor and Releasor's Attorneys understand and agree that any issue concerning the interpretation of this Release or its effect upon the parties hereto shall be governed by the law of the California.

**8.      Complete Agreement.** Releasor and Releasor's Attorneys understand and agree that this is the complete Agreement between the parties, and that there are no written or oral understandings, agreements or terms directly or indirectly connected with this Agreement that are not expressly incorporated herein.

**9.      Severability.** In the event that any provision of this Release is found to be unlawful or unenforceable, the remaining provisions shall remain in full force and effect.

**10.      Admissibility.** Releasor and Releasor's Attorneys agree to the introduction into evidence of this Release at any trial, hearing, or inquiry conducted subsequent to the date of execution hereof.

**11.      Confidentiality Agreement.** The parties to this Release, including Releasor's Attorneys, further understand and agree that the terms and conditions of this settlement, and any communications between the parties concerning the settlement and the negotiations thereof (the

3

"Confidential Information"), are confidential and the confidentiality of the settlement is a material inducement to each party in the making of this settlement. Therefore, the parties, including Releasor's Attorneys, agree that neither they nor their executors, administrators, officers, employees, attorneys, agents, and/or assigns will directly or indirectly publish, discuss, or otherwise disclose the Confidential Information except: (1) as authorized or directed by a court order from a court of competent jurisdiction; (2) to the parties' respective attorneys, accountants, auditors, tax advisors, financial planners, insurers, and/or reinsurers; (3) in an action to enforce the terms of the settlement; (4) pursuant to written agreement between and among the parties; (5) as authorized or directed by governmental regulatory authorities; and/or (6) as otherwise required by law. Further, the Releasor and Releasor's Attorneys acknowledge, agree, and stipulate that any disclosure of the Confidential Information will constitute a breach of the Confidentiality Agreement.

It is further declared that no monetary consideration is being paid for, on account of, or in exchange for the above terms of confidentiality, as the mutual benefits and privacy afforded to each party hereto by such terms are in and of themselves sufficient consideration thereof.

Said sums constitute payment for damages on account of personal injuries or physical sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended, and Section 130(c) of the Internal Revenue Code of 1986, as amended.

**12.    Counterparts.** This Release may be executed in one or more counterparts, all of which taken together shall constitute one and the same Release. A signed counterpart is as binding as an original. A facsimile copy of any signature on this Release is as binding as an original.

**13.    Attorneys' Fees and Costs.** Each party will bear their own attorneys' fees, expenses, and costs.

**14.    Signature.** Releasor hereby represents and warrants that Releasor has read this Release, consisting of **4** pages; is competent to understand and enter into this Release; is not under any restraint or duress; has conferred with legal counsel; understands that by executing this Release, Releasor has released Releasor's legal rights against Releasees as stated herein; understands its terms; understands that Releasees are relying on Releasor's promises, representations, and warranties contained herein; and agrees to the terms of this Release.

9\6\18
Date

X _____
TAKIYAH CHANDLER
GAL for minor KAMILAH DAVIS

9-6-18
Date

LAW OFFICES OF JOEL H. SEIGAL
& ASSOCIATES

By: _____
JOEL SIEGAL

4

# EXHIBIT 3

CHANDLER V. AMTRAK

Case No. 2:17 cv-01291-TLN-EFB

EXHIBIT 3 – COSTS AND EXPENSES

**JOEL H. SIEGAL**
**ATTORNEY AT LAW**
235 MONTGOMERY ST. STE 800  PH. 777-5547
SAN FRANCISCO, CA 94104-2911

$\frac{90-118}{1211}$ 18

8827

DATE 4-25-18

PAY TO THE
ORDER OF ___Dr. Nikolaj Wolfson___ | $ 1,300.00/XX

___One Thousand Three Hundred___ DOLLARS

fnb norcal
FIRST NATIONAL BANK
OF NORTHERN CALIFORNIA

Battery Street Branch
130 Battery Street
San Francisco, CA 94111
415-392-0642
www.fnbnorcal.com

MEMO ___( ___ )___

⑆121101189⑆   13  3624⑈8827

# INVOICE

## RAPID SERVE

601 Van Ness Ave, Suite J
San Francisco, CA 94102
(415) 882-2266 FAX:(415) 882-2277
rapidservesf@yahoo.com

Tax ID:94-2974461

| Customer | Date | Invoice |
|----------|------|---------|
| SIEGAL | 04/18/17 | 00038103-00 |

**Bill To:**

JOEL H. SIEGAL (SBN 117044)
235 MONTGOMERY ST. #800
SAN FRANCISCO, CA 94104

**Ordered By:**

JOEL H. SIEGAL (SBN 117044)
235 MONTGOMERY ST. #800
SAN FRANCISCO, CA 94104

**Case Information:** CHANDLER AS GAL
vs. AMTRAK

**Location:**
**Re:**
**Firm's File Number:**
**Claim Number:** STK-CV-UPI-2017-0002762

| Description | Units | Rate | Amount | Tax |
|-------------|-------|------|--------|-----|
| COURT SERVICE | 1 | 75.00 | 75.00 | |

JOEL H. SIEGAL
ATTORNEY AT LAW
235 MONTGOMERY ST. STE 800  PH. 777-5547
SAN FRANCISCO, CA 94104-2911

90-118
1211   18         8047

DATE 4-19-17

PAY TO THE ORDER OF  Rapid Servi                    $ 75.00/xx

Seventy Five only                    DOLLARS

Battery Street Branch
130 Battery Street
San Francisco, CA 94111
415-392-0642
www.fnbnorcal.com

fnb norcal
FIRST NATIONAL BANK
OF NORTHERN CALIFORNIA

MEMO

Joel

⑆121101189⑆  13  3624⑈8047

75.00

$ 75.00

**Bill to:**

JOEL H. SIEGAL (SBN 117044)
235 MONTGOMERY ST. #800
SAN FRANCISCO, CA 94104

| Customer | Date | Invoice |
|----------|------|---------|
| SIEGAL | 04/18/17 | 00038103-00 |

$ 75.00



Return to: RAPID SERVE, 601 Van Ness Ave, Suite J, San Francisco, CA 94102,  (415) 882-2266  (415) 882-2277
INVOICE DUE AND PAYABLE UPON RECEIPT. ACCOUNTS 30 DAYS OR MORE PAST DUE SUBJECT TO SERVICE CHARGE OF 1 1/2% PER MONTH (18% APR).

# JOEL H. SIEGAL
## ATTORNEY AT LAW

**235 Montgomery Street, Suite 800**
**The Russ Building**
**San Francisco, California 94104**
**Telephone (415) 777-5547**
FAX        (415) 777-5247

March 16, 2017

Rapid Serve
601 Van ness Avenue Suite J
San Francisco, ca. 94102

Re;    Chandler as GAL v. Amtrak
San Joaquin superior

Dear Rapid:

Can you file in San Joaquin superior Unlimited
Petition to appoint guardian Ad Liten (Ex parte)
Summons
Complaint,
Civil cover Sheet.

Attached is a check for $500.00

Sincerely,

Joel H. Siegal

---

**JOEL H. SIEGAL**
**ATTORNEY AT LAW**
235 MONTGOMERY ST. STE 800  PH. 777-5547
SAN FRANCISCO, CA 94104-2911

90-118
1211  18

8004

DATE 3-15-17

PAY TO THE
ORDER OF_____ Rapid Serve                                    $ 500.00

_____Five Hundred Only _____ DOLLARS

fnb norcal
FIRST NATIONAL BANK
OF NORTHERN CALIFORNIA

Battery Street Branch
130 Battery Street
San Francisco, CA 94111
415-392-0642
www.fnbnorcal.com

MEMO _____

**qds**

Invoice

P.O. BOX 49051
SAN JOSE, CA 95161-9051
(800) 800-6800
Fax (408) 441-7070
F.E.I.N. 75-2652336

*Quality • Uniformity • Excellence • Service • Teamwork*

## QUEST DISCOVERY SERVICES

**Remittance Copy**

http://www.questds.com/

Bill to: SIE056

ATTN: JOEL H. SIEGAL, ESQ.
JOEL H. SIEGAL
ATTORNEY AT LAW
235 MONTGOMERY ST.,#1060
SAN FRANCISCO, CA  94104

Ordered by:

| | |
|---|---|
| Invoice #: | SJS714736A |
| Order Date: | 11/16/17 |
| Depo Date: | 10/31/17 |
| Invoice Date: | 11/16/17 |
| Case     #: | 217CV01291TLN |
| Date of Loss: | 09/03/16 |
| Client File  #: | |
| Claim      #: | |
| Insured: | |

Pertaining to:  K.D. A MINOR VS. AMTRAK

From:
KAMILAH DAVIS DOB:10/15/11
SAN FRANCISCO GENERAL HOSPITAL & TRAUMA CENTER, 1001 POTRERO AVE., BLDG 20
4TH FLR. SAN FRANCISCO, CA 94110 ATTN: LEGAL DESK-(WARD 24)

CHARGES:

| | |
|---|---|
| BASIC CHARGE | |
| RETRIEVAL SERVICE CHARGE | 39.00 |
| MINIMUM PAGE CHARGE | 25.00 |
| | 8.00 |

Comments:
**REQUESTED RECORDS ENCLOSED AS SPECIFIED.**

| | |
|---|---|
| Gross: | 72.00 |
| Tax: | 6.38 |
| Shipping / Handling: | 9.35 |
| **Total:** | **87.73** |

Payment due 30 days from invoice date, a $20 late fee may be accessed monthly for invoices 90 days past invoice date.

(Remittance Portion)

Quest Discovery Services
PO Box 52969
Houston, TX 77052

| | |
|---|---|
| Invoice #: | **SJS714736A** |
| Total Due: | **87.73** |
| Bill To: | SIE056 |
| Ship To: | |

EOE M/F/D/V

mhubbard / INVOICE

# qds

**QUEST DISCOVERY SERVICES**

**Invoice**

P.O. BOX 49051
SAN JOSE, CA 95161-9051
(800) 800-6800
Fax (408) 441-7070
F.E.I.N. 75-2652336

*Quality • Uniformity • Excellence • Service • Teamwork*

http://www.questds.com/

**Remittance Copy**

Bill to:
SIE056

ATTN: JOEL H. SIEGAL, ESQ.
JOEL H. SIEGAL
ATTORNEY AT LAW
235 MONTGOMERY ST.,#1060
SAN FRANCISCO, CA  94104

Ordered by:

| | |
|---|---|
| Invoice #: | SJS715605A |
| Order Date: | 11/16/17 |
| Depo Date: | 11/30/17 |
| Invoice Date: | 12/28/17 |
| Case        #: | 217CV01291TLN |
| Date of Loss: | 09/03/16 |
| Client File  #: | |
| Claim        #: | |
| Insured: | |

Pertaining to:  K.D. A MINOR VS. AMTRAK
KAMILAH DAVIS DOB:10/15/11
From:          SAN FRANCISCO GENERAL HOSPITAL & TRAUMA CENTER, 1001 POTRERO AVE., ROOM 2B5
SAN FRANCISCO, CA 94110 ATTN: MEDICAL RECORDS DEPARTMENT

CHARGES:

| | | | |
|---|---|---|---|
| | | BASIC CHARGE | 39.00 |
| PH02 | 20 | PHOTOSTAT(S) | 8.00 |

Comments:
**REQUESTED RECORDS ENCLOSED AS SPECIFIED.
THANK YOU!**

| | |
|---|---|
| Gross: | 47.00 |
| Tax: | 4.30 |
| Shipping / Handling: | 9.85 |
| **Total:** | **61.15** |

Payment due 30 days from invoice date, a $20 late fee may be accessed monthly for invoices 90 days past invoice date.

(Remittance Portion)

| | |
|---|---|
| Invoice #: | **SJS715605A** |

Quest Discovery Services
PO Box 52969
Houston, TX 77052

| | |
|---|---|
| Total Due: | **61.15** |
| Bill To: | SIE056 |
| Ship To: | |



EOE M/F/D/V

hhaan / INVOICE

**epiq**

INVOICE
Page    1

| | Phone: | 770-390-2700 |

Siegal and Richardson, LLC
Russ Building
235 Montgomery St
San Francisco, CA  94104

| | |
|---|---|
| Invoice #: | M-187900 |
| Invoice Date: | 04/25/18 |
| Our Order #: | LA-168635-02 |
| Customer #: | 123430 |

Attn:  JOEL SIEGAL

Terms: NET 30 DAY

Case No: 2:17-cv-01291-TLN-EFB

Takiya Chandler vs
National Railroad Passenger Corp

| | QTY | UNIT | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| Job Date: 03/30/18 | | | | |
| Deponent: Asale Chandler | | | | |
| Word Index | 13 | EACH | $1.75 | $22.75 |
| Delivery - Transcript | 1 | EACH | $20.00 | $20.00 |
| Deposition Transcript - Copy | 60 | PAGE | $3.50 | $210.00 |
| Production and Code Compliance | 1 | EACH | $40.00 | $40.00 |

| | | |
|---|---|---|
| Subtotal: | | $292.75 |
| Sales Tax | | $0.00 |
| Total Invoice USD | | $292.75 |

Depo Location:    235 Montgomery Street
Suite 1060
San Francisco, CA  94104

Thank You. Your Business is appreciated.

JOEL H. SIEGAL
ATTORNEY AT LAW
235 MONTGOMERY ST. STE 800  PH. 777-5547
SAN FRANCISCO, CA  94104-2911

90-118
1211        18                    8825

DATE    4-23-18

PAY TO THE
ORDER OF    EPIQ.                                    $ 292.75

Two   Hundred  ninety  Two  75/xx DOLLARS

Battery Street Branch
130 Battery Street
San Francisco, CA 94111
415-392-0642
www.fnbnorcal.com

fnb norcal
FIRST NATIONAL BANK
OF NORTHERN CALIFORNIA

MEMO  Chandler

⑈121101189⑈    13  3624⑈8825

REMIT TO:
Document Technologies, LLC
DBA Epiq Court Reporting
PO Box 936158
Atlanta, GA 31193-6158

PLEASE PAY FROM THIS INVOICE
ABA Routing #: 121000248
Beneficiary Account #: 4125126904
Beneficiary Name: Epiq

For credit card payments, please visit
https://ww2.e-billexpress.com/ebpp/DTI

# INVOICE

Integrity Document Solutions, Inc.
Facility: Zuckerberg San Francisco General
PO Box 53327
San Jose, CA 95153
IDS Federal Tax ID: 82-0549982

**SIEGAL & RICHARDSON, LLP**
**235 MONTGOMERY ST STE 1060**
**SAN FRANCISCO, CA 94104**

**Invoice Date:** 05/16/2018

This is the invoice for the medical records you requested from **Zuckerberg San Francisco General.** Your records have been placed on the IDS/TRIMSNet e-Delivery website for electronic delivery at **https://ids.trimsnet.net/pickup.** You will need the invoice/tracking number and download code printed on this sheet as well as the patient's last name.

| Invoice/Tracking Number: | 71-101366 | | Patient Name: | KAMILAH D. |
|---|---|---|---|---|
| Download Code: | Not shown | | Case/Claim ID: | n/a |

| Description | Qty | Unit Price | Amount |
|---|---|---|---|
| Processing Charge | 1 | $65.95 | $65.95 |
| | | Total | $65.95 |
| | | Payments | $65.95 |
| | | **BALANCE DUE** | $0.00 |

Invoice Questions: (702) 822-6400                    Request Questions: (702) 822-6400
Our hours of operation are from 8AM to 4:30PM PT. Messages will be returned within 48 hours.

**Additional Notes:**
REQUESTED DOCUMENTS: MEDICAL RECORDS
DATES OF SERVICE: 2011 TO PRESENT

Printed: 05/21/2018

San Francisco • Department of Public Health
SF HEALTH NETWORK
• Zuckerberg SF General Hospital and Trauma Center
• Community Oriented Primary Care Clinics
• Laguna Honda Hospital and Rehabilitation Center

Zuckerberg San Francisco General Hospital and Trauma Center
1001 Potrero Avenue, San Francisco, CA 94110-3518
Billing Office • Building 20, 4th Floor
Attention:  Legal Desk
Telephone: (415)-206-8658

**SF HEALTH NETWORK**
SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH

JOEL H. SIEGAL
Attorney At Law
235 Montgomery Street, Ste. 1060
San Fracisco, CA 94104

03/23/18

Re:     DAVIS, KAMILAH

Med  Rec . #:     01811462

In compliance with Subpoena Duces Tecum/Authorization we are furnishing the enclosed copies of hospital charges/bills.  Our fee for service is:

| | | | | |
|---|---|---|---|---|
| 1 | Flat Processing Fee | $15.00 | $ | 15.00 |
| 13 | Standard Billing Copy (s) | $0.30 | $ | 3.90 |
| 5 | Shipping Postage | | $ | 1.78 |
| | **Total Charges** | | $ | 20.68 |
| | Payment Received | | $ | |
| | **Total Balance Due** | | $ | 20.68 |

**PAYMENT IS DUE UPON RECEIPT.  PLEASE RETURN THIS FORM  WITH PAYMENT TO:**

San Francisco General Hospital
P. O. Box 740432
Los Angeles, CA 90074-0432
Tax I.D. # 946000417



1001 Potrero Avenue, San Francisco, CA 94110